IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLETTE L. BROWN                          :

                                          :

   v.                                     :   Civil Action No. DKC 2005-0730

                                          :

MCKESSON BIOSERVICES CORP.                :

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are: (a) the motion of Defendant McKesson Bioservices Corp. to dismiss or, in the alternative, for summary judgment (paper 11); and (b) the motion of Plaintiff Colette L. Brown to amend her complaint (paper 16).  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

**I.   Background**

The following facts are either undisputed or viewed in the light most favorable to Plaintiff.  Plaintiff, an African-American female, was employed by Defendant as a medical writer/editor. Plaintiff, proceeding *pro se*, alleges that Defendant engaged in racial discrimination in hiring, promotion, compensation, and job assignments, and that Defendant unlawfully retaliated against her by attacking her work performance and by firing her.

Plaintiff alleges numerous facts in support of her complaint. Plaintiff first states that when she commenced her employment with

Defendant in November 2000, she was one of three African-American employees in the office.  Within six to eight months, Plaintiff received a merit salary increase of $900.  In the summer of 2001, Defendant's parent company issued a company-wide compensation program but only those employees whose salaries fell below a certain standard were eligible to receive increases.  Plaintiff states that within her office, the compensation program was applicable only to the two other African-American employees, and she did not receive a salary increase.  Plaintiff also notes that after these two African-American employees received salary increases, they were given more job responsibilities and new titles, "as if they received promotions."  Plaintiff maintains that she "voiced [her] opposition to this disparity and became acutely aware that there were few, if any, Blacks or minorities in mid to upper level positions."

Plaintiff asserts that on or around September of 2001, Defendant hired a Caucasian female as a part-time medical writer/editor.  Plaintiff states: "It was with this employee that the Defendant's agents blatantly exhibited discriminatory behavior."  Plaintiff alleges that Defendant gave this employee opportunities for advancement that it did not offer to Plaintiff or the other African-American medical writers/editors.  Plaintiff also maintains that she voiced her opposition to Defendant's "behavior" verbally and in writing via an Employee Feedback form, which she

2

completed in March 2002.   Plaintiff contends that as a result of voicing her opposition, "Defendant's agents retaliated with an abusive, oppressive attack upon [her] work performance from April 2002 to October 2002."   Nevertheless, in October 2002, Defendant found that Plaintiff's work performance had improved, and Plaintiff maintains that Defendant offered her a salary increase if she agreed not to pursue her "complaint" any further.   Plaintiff declined the offer.[1]

On February 13, 2003, Plaintiff filed a discrimination complaint ("Charge I") with the Maryland Commission on Human Rights ("MCHR").[2]   In the charge, Plaintiff asserted that beginning in October 2002, she was discriminated against based on her race and she was retaliated against for filing an "in-house complaint." Plaintiff stated that her supervisor harassed her with regard to her work performance, talked to her in a demeaning manner, and made false accusations against her.   With regard to the retaliation claim, Plaintiff asserted that after she completed an evaluation of

---

[1] The salary increase was offered to encourage Plaintiff to stop disputing her 2002 performance review, which noted Plaintiff's performance problems, and not to dissuade Plaintiff from pursuing any race discrimination claim. (Paper 15, ex. 24, at 2) (e-mail from Plaintiff stating that the salary increase was offered contingent upon her not pursuing her complaints regarding her 2002 performance review).

[2] In her complaint, Plaintiff states that she filed her administrative charge in January 2003.   The evidence shows that although Plaintiff met with a MCHR official in January, a formal administrative complaint was not filed until February.

her supervisor, the supervisor acted in retaliation by making false statements in Plaintiff's performance evaluation.[3]   Plaintiff also asserted that Defendant retaliated against her because she objected to her performance appraisal and refused to sign a statement accepting it, despite the fact that Defendant offered her a 3% salary increase if she signed off on the appraisal. (Paper 11, ex. 1, at 2).

Defendant terminated Plaintiff's employment on March 12, 2003. Defendant maintains that Plaintiff was fired because of a pattern of insubordination.  Following her termination, it appears that Plaintiff sought unemployment benefits.  Plaintiff states in her complaint that during her unemployment benefit hearings on May 8, 2003, and June 2, 2003, "it was stated that the White part-time Medical Writer/Editor (who was present) was considered my supervisor, and she discussed my work assignments with Defendant's agent Dr. Tatro [Plaintiff's supervisor]."[4]

On October 16, 2003, Plaintiff sent a letter to MCHR indicating that she wished to add a charge of retaliation to her complaint. (Paper 15, ex. 1).  In the letter, Plaintiff briefly references her termination, and states that since her discharge,

_____

[3] It appears that this supervisor evaluation and the feedback form referred to in Plaintiff's complaint pertain to the same document.

[4] It is unclear how this statement relates to Plaintiff's discrimination claims.

4

Defendant has acted to prevent her from receiving unemployment "with a charge of insubordination." On November 24, 2003, believing her case to be closed with MCHR, Plaintiff sent a letter directly to the Equal Employment Opportunity Commission ("EEOC"), again requesting to amend the February 13, 2003, administrative charge to include a retaliation claim.[5] The letter specifically identifies those actions that Plaintiff alleges were retaliatory: Plaintiff's termination and Defendant's denial of unemployment benefits.

Plaintiff did not follow up with the EEOC or the MCHR on her request for an amendment and states that she did not learn of its status until after a June 29, 2004, telephone interview with the EEOC. Plaintiff states that following the phone interview, in August 2004, she received a draft of a second administrative charge alleging retaliation. Because she did not feel it adequately represented what was discussed during the telephone interview, she requested several changes to the charge in an August 10, 2004, letter to the EEOC. She states that on or about September 24, 2004, the retaliation charge was sent back to her without the requested changes. Plaintiff maintains that she nevertheless signed the charge and sent it back. This subsequent administrative charge, dated October 1, 2004, alleges that in March 2003 Plaintiff

---

[5] Plaintiff incorrectly filed the letter with the EEOC in Washington, D.C., who forwarded the letter to the EEOC in Baltimore.

was disciplined and discharged for filing a discrimination complaint with MCHR ("Charge II").[6]  (Paper 11, ex. 3).

On December 3, 2004, the EEOC issued a right-to-sue letter regarding Plaintiff's initial discrimination charge, Charge I.  On December 14, 2004, the EEOC issued a right-to-sue letter for the retaliation charge, Charge II.  Plaintiff filed a complaint in this court on March 15, 2005, pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.  In the complaint, Plaintiff seeks damages in the amount of $500,000.  On June 15, 2005, Defendant filed a motion to dismiss, or in the alternative, for summary judgment.  (Paper 11).  On July 20, 2005, Plaintiff filed a motion to amend her complaint to increase the amount of damages she seeks to $2,500,000.  (Paper 16).

## II.  Motion to Dismiss or for Summary Judgment

### A.  Standard of Review

This court has previously treated motions to dismiss for failure to exhaust administrative remedies as governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.  *See Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D.Md. 2003), *aff'd,* 85 Fed.Appx. 960, 960 (4th Cir. 2004).  In light of the Supreme Court's very recent decision in *Arbaugh v. Y & H Corp.*, 546 U.S. ___, No. 04-944, 2006 WL 397863 (Feb. 22, 2006), as well as other

---

[6] The charge does not contain any reference to the alleged retaliatory denial of unemployment benefits.

authorities, that result might be incorrect and, at least, the proper procedural treatment of such a motion is unclear. If the issue is one of subject matter jurisdiction, the motion is governed by Fed.R.Civ.P. 12(b)(1) and a court can consider matters outside of the pleadings in its analysis. However, if the issue is characterized more properly as one of a failure to state a claim, a court may consider only the pleadings unless it converts the motion to one for summary judgment.

It is today reasonably clear that a failure to exhaust administrative remedies based on untimely filings is not an issue of subject matter jurisdiction and therefore, with regard to timeliness issues, Defendant's motion is not governed by Fed.R.Civ.P. 12(b)(1). The Supreme Court held in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), that the time period for filing a civil suit after receiving a right-to-sue letter, whether against the federal government or a private employer, is subject to waiver and equitable tolling and thus, is not jurisdictional. *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The United States Court of Appeals for the Fourth Circuit has also held, however, that receipt of a right-to-sue letter is a jurisdictional requirement:

> We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979) ("[A] plaintiff

in a civil action under Title VII must allege and prove filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue."); *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) ("[I]t is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under § 2000e-5(f)(1)."); *see also Bullard v. Sercon Corp.*, 846 F.2d 463, 468 (7th Cir. 1988) (Posner, J.) ("Title VII's requirement that the plaintiff exhaust the administrative remedies provided by the statute is jurisdictional; that is, a court is obligated to enforce the requirement even if the defendant has overlooked it."); *Lowe v. City of Monrovia*, 775 F.2d 998, 1003 (9th Cir. 1985) (Reinhardt, J.) ("When a plaintiff fails to raise a Title VII claim before the EEOC, the district court lacks subject matter jurisdiction to hear it."). *Compare Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that Title VII's timely filing requirements are not jurisdictional); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 n.6, 104 S.Ct. 1723, 1726 n.6, 80 L.Ed.2d 196 (1984) (per curiam). Thus, where "[n]either the complaint nor the amended complaint alleges" that the plaintiff has "complied with these prerequisites," the plaintiff has not "properly invoked the court's jurisdiction under Title VII." *United Black Firefighters*, 604 F.2d at 847.

*Davis v. N.C. Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995).

Since 1995, the question certainly has fostered debate. For example, the United States Court of Appeals for the Second Circuit stated as follows, in *Francis v. City of New York*, 235 F.3d 763, 768 (2nd Cir. 2000):

[W]hen our decisions have turned on the question of whether proper administrative exhaustion is a jurisdictional prerequisite rather than a waivable condition precedent to bringing suit, we have consistently chosen the latter approach, and, significantly, we did so when faced with the precise component of the administrative process that is at issue here. Accordingly, we today reiterate what was explicit in *Pietras* [*v. Bd. of Fire Comm'rs*, 180 F.3d 468 (2nd Cir. 1999)], implicit in *Cruz* [*v. Coach Stores, Inc.*, 202 F.3d 560 (2nd Cir. 2000)], and what the overwhelming majority of other circuits have held: "as a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000); *accord Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983) ("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements."); *see also, e.g., Vinieratos v. United States Dep't of Air Force*, 939 F.2d 762, 768 n.5 (9th Cir. 1991); *Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989); *cf. Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir. 1998) (holding that obtaining a right-to-sue letter is a waivable precondition to suit, not a jurisdictional prerequisite); *Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3rd Cir. 1984) (same); *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st Cir. 1996) (treating as waivable the requirement that all defendants sued on a Title VII claim must have been named in the EEOC charge); *but see Jones* [*v. Runyon*], 91 F.3d [1398] at 1399 n.1 (10th Cir. [(1996)]); *Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995) (holding that receipt of a right-to-sue letter is a jurisdictional requirement, *Zipes* notwithstanding).

The Fourth Circuit has, at times, treated an exhaustion issue as non-jurisdictional. For example, in *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002), the court noted:

> Although the district court accepted the College's characterization of the exhaustion issue as jurisdictional, it is in fact "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). For this reason, and because the district court considered materials outside of the pleadings, we treat the College's motion as a motion for summary judgment.

*See also Chacko v. Patuxent Inst.*, 429 F.3d 505 (4th Cir. 2005)(citing cases). One case is particularly instructive, because the court acknowledged the various approaches courts have taken to the problem:

> It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("Where . . . claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."). This requirement is variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies.

*Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148-49 (4th Cir. 1999).[7]  Perhaps, as in *Arbaugh v. Y & H Corp.*, the Supreme Court will one day untangle this web.  For this case, however, it is not necessary to do so.  Whether jurisdictional or not, Plaintiff's failure to exhaust administrative remedies is fatal to some, but not all, of her claims.  Regardless of whether the issue is characterized as one of subject matter jurisdiction or failure to state a claim, the materials before the court are adequate to resolve this issue and the result would be the same.

## 1.  Motion to Dismiss

A 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510

---

[7] At least one district court judge within the Fourth Circuit has recognized and discussed the various court approaches in detail.  *See Monk v. Stuart M. Perry, Inc.*, No. Civ.A. 5:01CV00093, 2002 WL 1397018, at *2 (W.D.Va. June 13, 2002) (unpublished opinion).

U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## 2.  Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if: (a) there exists no genuine issue as to any material fact and (b) the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that these two conditions are met.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592,

12

595 (4th Cir. 1985).   A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.   Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.   *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.   However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."   *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment under Fed.R.Civ.P. 56.   A court considers only the pleadings when deciding a Rule 12(b)(6) motion.   Where the parties present matters outside of the pleadings and the court considers those matters, the court will treat the motion as one for summary judgment.   *See Gadsby by Gadsby v. Grasmick*, 109 F.3d. 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

**B.  Analysis**

Defendant asserts three arguments in support of its motion: (a) Plaintiff was untimely in filing both her administrative retaliation complaint, Charge II, and this civil action; (b)

Plaintiff failed to exhaust her administrative remedies because she presents claims that exceed the scope of her administrative charges; and (c) Plaintiff fails to state a claim of discrimination or retaliation.[8]

## 1. Failure to Exhaust - Untimely Filings

Whether Plaintiff's claims are untimely and therefore barred is not evident from the face of her complaint, and thus the court will consider matters outside of the pleadings in its analysis. Defendant's motion will be treated as one for summary judgment pursuant to Fed.R.Civ.P. 56.

## a. Administrative Charge of Retaliation

Defendant maintains that Charge II was untimely because the alleged acts, Plaintiff's discipline and termination, occurred more than a year before the charge was filed.  "In a deferral state such as Maryland, an EEOC charge must be filed within 300 days of the date of the alleged unlawful employment practice." *Lane v. Wal-mart Stores East, Inc.*, 69 F.Supp.2d 749, 752 (D.Md. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)).  Notwithstanding this time limitation, in *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), the Fourth Circuit explicitly held that a separate administrative charge is not a prerequisite to a suit alleging retaliation for filing the first administrative charge.  Moreover, the evidence shows that

---

[8] Defendant does not assert that Plaintiff's initial EEOC charge, Charge I, was untimely.

Plaintiff sought not to file a new charge, but to amend her initial administrative charge to include the retaliation claim.  The Fourth Circuit has noted that the applicable EEOC regulations permit such an amendment:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein.  Such amendments and *amendments alleging additional acts which constitute unlawful employment practices* related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

*Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994); *see also* 29 C.F.R. § 1601.12.  Thus, even if Plaintiff was required to exhaust her administrative remedies regarding her retaliation claim, the claim would constitute an amendment to her initial charge that was pending at the time, and would relate back to the date of the initial charge.  *D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 892 (D.Md. 1995) (applying *Balazs* and finding that claims related back to the date of the original charge where the initial charge was pending before the EEOC).  *See also Daso v. Grafton School, Inc.*, 181 F.Supp.2d 485, 489 (D.Md. 2002)(noting that a plaintiff could bring a claim based on retaliation occurring during the pendency of an EEOC claim because a Title VII lawsuit "may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC]." (internal quotation marks omitted)).

Plaintiff's claim that she was retaliated against because she filed the initial charge of discrimination is not barred by administrative time requirements.

**b.  Civil Complaint**

Defendant asserts that Plaintiff may not pursue any claim related to Charge I because she failed to file this lawsuit within the requisite time period following the EEOC's issuance of a right-to-sue letter.  Defendant states that despite receiving the December 3, 2004, right-to-sue letter, which specifically indicated Plaintiff had 90 days within which to file suit, Plaintiff ignored this requirement.  Her complaint, filed March 15, 2005, came after the 90-day time period had expired.  Plaintiff maintains that because she believed that her initial administrative charge was amended, she thought that there was only one charge pending. Plaintiff states that she therefore was surprised to receive the second right-to-sue letter, sent on December 14, 2004, but that after she received this letter she believed that it, and not the initial letter, initiated the 90-day time period.  Plaintiff maintains that she filed her complaint within 90 days of receiving the second letter and therefore her suit is timely.

Title VII plaintiffs have a ninety-day period following receipt of a right-to-sue letter to file their claim.  42 U.S.C. § 2000e-5(f)(1).  There is no question that Plaintiff's complaint was filed beyond the initial 90-day period, which was triggered by the

16

first right-to-sue-letter.  The EEOC sent the letter on December 3,
2004.  Although there is no evidence pertaining to when Plaintiff
was in actual receipt of the letter, the presumption is that
Plaintiff received the letter within three days.  *See Baldwin
County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (noting
that pursuant to Fed.R.Civ.P. 6(e), the presumed date of receipt is
three days after the right-to-sue letter is mailed); *Nguyen v.
Inova Alexandria Hosp.*, 187 F.3d 630 (4th Cir. 1999) (unpublished
opinion), *cert. denied*, 528 U.S. 1188 (2000) (adopting Fed.R.Civ.P.
6(e)'s three-day rule).  Assuming Plaintiff received the letter on
December 6, 2004, the 90-day period would have expired prior to
March 15, 2004.  Plaintiff did, however, file her complaint within
the requisite time period following the second right-to-sue letter,
sent on December 14, 2004, and, pursuant to the three-day rule,
received on December 17, 2004.

Although the ninety-day time period for filing a civil suit
may be subject to waiver and equitable tolling in limited
circumstances, *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89,
95-96 (1990), the Supreme Court has noted the importance of strict
adherence to procedural rules:

> Procedural requirements established by
> Congress for gaining access to the federal
> courts are not to be disregarded by courts out
> of a vague sympathy for particular litigants.
> As we stated in *Mohasco Corp. v. Silver*, 447
> U.S. 807, 826, 100 S.Ct. 2486, 2497, 65
> L.Ed.2d 532 (1980), "[i]n the long run,
> experience teaches that strict adherence to

> the procedural requirements specified by the
> legislature is the best guarantee of
> evenhanded administration of the law.

*Baldwin County Welcome Ctr.*, 466 U.S. at 152.

There is no evidence that Defendant waived its right to assert
the limitations argument.  With regard to the doctrine of equitable
estoppel, its application is extremely narrow.  In *Irwin*, the
Supreme Court noted:

> We have allowed equitable tolling in
> situations where the claimant has actively
> pursued his judicial remedies by filing a
> defective pleading during the statutory
> period, or where the complainant has been
> induced or tricked by his adversary's
> misconduct into allowing the filing deadline
> to pass.  We have generally been much less
> forgiving in receiving late filings where the
> claimant failed to exercise due diligence in
> preserving his legal rights.

*Irwin*, 498 U.S. at 96.  Likewise, the Fourth Circuit has also noted
the limited application of the doctrine:

> Equitable tolling "is appropriate when, but
> only when, 'extraordinary circumstances beyond
> [the petitioner's] control prevented him from
> complying with the statutory time limit.'"
> *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir.
> 2001) (quoting *Harris* [*v. Hutchinson*], 209
> F.3d [325,] 330 [(4th Cir. 2000)]).
> Accordingly, under our existing "extraordinary
> circumstances" test, [the petitioner] is only
> entitled to equitable tolling if he presents
> (1) extraordinary circumstances, (2) beyond
> his control or external to his own conduct,
> (3) that prevented him from filing on time.

*Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc), *cert.*
*denied*, 541 U.S. 905 (2004).

There is no evidence that Plaintiff's failure to file suit within the ninety-day period triggered by the first right-to-sue letter was due to "extraordinary circumstances" of any kind.  The first right-to-sue letter expressly stated that Plaintiff had ninety days within which to file a claim.  After receiving the second letter, instead of inquiring as to the applicable limitations period, Plaintiff made the incorrect and unverified assumption that the second letter triggered the limitations period for both Charge I and Charge II.  This "garden variety claim of excusable neglect" is not extraordinary, and does not render applicable the doctrine of equitable estoppel.  *Irwin*, 498 U.S. at 97.  To the extent that Plaintiff asserts any claims related to Charge I, they are barred as untimely.[9]

## 2.  Failure to Exhaust - Scope of Claims

Even if Plaintiff's suit was entirely timely, the majority of her claims are foreclosed because she failed to raise them at all in the administrative process, and thus failed to exhaust her administrative remedies.  Defendant maintains that because neither Charge I nor Charge II references a discriminatory or retaliatory compensation scheme, or any discriminatory or retaliatory denial of

---

[9] There does not, however, appear to be much overlap between Plaintiff's complaint and the initial EEOC charge.  The only corresponding argument is Plaintiff's assertion that her supervisor retaliated against her in the performance review process after she filed an "in-house complaint" regarding her performance review and criticized her supervisor.

advancement opportunity, Plaintiff should not now be allowed to assert such claims in this lawsuit.

In order to assert Title VII claims in court, "[i]t is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999). There is, however, an exception to that rule. "[T]he scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Nealon*, 958 F.2d at 590 (internal quotation marks omitted). *See also Daso*, 181 F.Supp.2d at 489. In other words, claims raised in court but not with the EEOC are procedurally barred unless they "would naturally have arisen from an investigation" of the administrative complaint. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

In her complaint, Plaintiff makes a number of allegations that were not raised in either administrative charge. Charge I addressed discrimination in the performance review process; harassment with regard to work performance; and retaliation based on Plaintiff's review of her supervisor and objections to and failure to sign a performance evaluation form. Charge II dealt only with the alleged retaliatory discipline and termination following Plaintiff's initial EEOC charge of discrimination.

Neither Charge I nor Charge II addressed discrimination or retaliation in hiring, compensation, or denial of advancement opportunities.  Moreover, such claims would not have naturally arisen in the course of the EEOC's investigation of the issues Plaintiff raised in her administrative claims.  Therefore, the majority of Plaintiff's claims are foreclosed because Plaintiff did not include them in either administrative charge and therefore has not exhausted her administrative remedies.[10]

## 3.   Failure to State a Claim

The only remaining claims that Plaintiff may now assert (i.e., those claims that were timely filed and within the scope of her administrative charges) are those raised in Charge II, relating to Defendant's alleged retaliation against Plaintiff because of her initial EEOC charge.  To survive a motion to dismiss, a plaintiff "is not required to plead a *prima facie* case of discrimination." *Luy v. Balt. Police Dep't*, 326 F.Supp.2d 682, 689 (D.Md. 2004), *aff'd*, 120 Fed. Appx. 465, 465 (4th Cir. 2005).  A plaintiff must, however, "allege facts that support a claim for relief." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003).  To state a claim of retaliation, Plaintiff must allege that: (1) she engaged in a

---

[10] Plaintiff makes additional arguments in her opposition memorandum, none of which were included in either administrative charge.  For example, Plaintiff alleges discrimination with regard to work transfers, communications about meetings, and office assignment.  (Paper 15, at 4).

protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the adverse action. *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997). With respect to the third element, "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Thus, the employer must know about the protected activity. *Id*. Courts also look to the length of time between the employer's awareness of the protected activity and the alleged adverse employment action. *See, e.g., Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (stating that a thirteen-month lapse negated any inference of a causal connection); *Dowe*, 145 F.3d at 657 (finding no retaliation where there was a three-year time lapse).

In her complaint, Plaintiff's retaliation argument centers on the alleged retaliation following her completion of an employee feedback form and her objections to her performance review. She does, however, refer to Charge II's wrongful termination claim and she provides her termination date.

Upon a liberal construction of Plaintiff's complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that pleadings by *pro se* litigants are subject to "less stringent standards"), Plaintiff's allegations set forth sufficient facts to satisfy the pleading requirements for a retaliation claim. Plaintiff states

that she filed an EEOC claim, which constitutes a "protected action," and that she was terminated a short time later.  Given that the protected activity was the filing of a formal complaint, which must be served on the employer, notice to Defendant is assumed.   Thus, the complaint can be construed to state a retaliation claim arising from her termination.

### III.  Motion to Amend Complaint

On July 20, 2005, Plaintiff filed a motion to amend her complaint to increase the damages sought from $500,000 to $2,500,000.[11] (Paper 16).  Title VII places a statutory cap on the amount of damages a successful litigant may receive.  42 U.S.C. § 1981a(b)(3).  Although the cap varies depending on the number of individuals a defendant employs, the maximum amount of compensatory and punitive damages a plaintiff may receive is $300,000. Accordingly, Plaintiff's motion to amend her complaint to increase the damages sought to $2,500,000 will be denied.

### IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss or in the alternative, for summary judgment, will be granted with respect to all discrimination and retaliation claims other than the alleged retaliatory actions taken following Plaintiff's initial EEOC filing

---

[11] Defendant's assertion that Plaintiff did not specify the amount of damages in the complaint is incorrect.  (Paper 1, at 6) (stating that Plaintiff is seeking damages in the amount of $500,000).

(i.e., other than claims related to Charge II).  Defendant's motion to dismiss the retaliation claims related to Charge II will be denied.  Plaintiff's motion to amend her complaint to increase her requested relief will be denied.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge